# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LIPPERT TILE COMPANY, INC.,
THE LIPPERT GROUP, LLC, and
DEANALAN CONSTRUCTION SERVICES, LLC,
        Plaintiffs,

    v.                              Case No. 11-CV-00412

INTERNATIONAL UNION OF BRICKLAYERS
& ALLIED CRAFTSMEN DISTRICT
COUNCIL OF WISCONSIN LOCAL 5,
        Defendant.

## DECISION AND ORDER

Plaintiffs Lippert Tile Company, Inc. ("Lippert Tile"), The Lippert Group, LLC ("The Lippert Group") and DeanAlan Construction Services, LLC ("DeanAlan") (collectively "the Companies") petition to vacate an arbitration award, and defendant, the International Union of Bricklayers & Allied Craftsmen District Council of Wisconsin Local #5 ("the Union"), asks that I enforce the award.

### I. BACKGROUND

Les and Jeff Lippert, who are brothers, have owned and operated Lippert Tile since 2000. Lippert Tile installs floor tile in Southwestern Wisconsin, and the Union represents the company's tile installers. In 2004, the Lippert brothers created The Lippert Group and its wholly owned subsidiary, DeanAlan. DeanAlan provides the same services as Lippert Tile in a similar geographic area, but uses non-union employees. By creating DeanAlan, the Lippert brothers engaged in a practice known as "double-breasting." The Lippert brothers claim that Lippert Tile was having trouble competing for jobs that do not require

unionized workers and so they began running two shops: a union shop that can bid on jobs that require union workers, and a non-union shop that can offer lower bids on other jobs.

The Companies have a close relationship with one another. Lippert Tile and The Lippert Group have different corporate officers, and DeanAlan has its own general manager, but all three companies lease office and warehouse space in the same building—a building owned by the Lippert brothers. In exchange for a fee, the Lippert Group provides administrative services for both Lippert Tile and DeanAlan, maintaining both companies' business records, processing their payrolls, handling their billing, and managing their bank accounts. The Lippert Group also supplies both companies with office and warehouse staff, including five salesmen/estimators, who meet weekly to review possible new projects. These salesmen/estimators decide which company will bid on a project and which estimator will put together the bid. The assigned estimator then bills his time to the company bidding on the project. If DeanAlan secures a project, the estimator becomes the project manager. If Lippert Tile wins a bid, the estimator hands the project off to a project manager employed directly by Lippert Tile. DeanAlan also rents trucks from and orders its supplies through Lippert Tile, reimbursing Lippert Tile for supplies at cost.

In September 2010, Union representative Jeffrey Leckwee sent the Companies a grievance letter claiming that they had violated the multi-employer collective bargaining agreement ("CBA") negotiated by the Milwaukee Tile Contractors Association ("MTCA") and signed by Lippert Tile and the Union. The Union contended that the CBA covered DeanAlan's employees in addition to Lippert Tile's because the Companies are so closely related that they constitute a single employer. The Companies disagreed, and the Union demanded that the dispute be arbitrated.

2

The CBA requires that disputes, "which may arise in connection with [the CBA]," be arbitrated by a joint arbitration committee ("JAC") consisting of three employer representatives, who are members of the MTCA and signatories to the CBA, and three Union representatives. (Decl. Matthew R. Robbins, Ex. C, Labor Agreement § 7.1, ECF No. 19.) The Union convened a JAC and the JAC heard the parties' dispute. Leckwee served as one of the Union representatives on the JAC. At the hearing, the Companies appeared and argued that the dispute was not substantively arbitrable because The Lippert Group and DeanAlan had not signed the CBA. They also argued that the JAC's members had not been properly selected, and that the Union had improperly and untimely filed the grievance. The JAC rejected all of these contentions and issued an award in favor of the Union finding that the Companies constituted a "single employer" and that they had violated the CBA by failing to treat DeanAlan's tile installers as members of the bargaining unit represented by the Union. (Robbins Decl., Ex. D.)

## II. DISCUSSION

Under Section 301 of the Labor Management Relations Act, a federal court has authority to review an arbitration award issued by a JAC pursuant to a CBA. Gen. Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co., 372 U.S. 517, 519 (1963) (citing Textile Workers Union of Am. v. Lincoln Mills of Ala., 353 U.S. 448 (1957)). To be enforceable, a JAC award must be "final and binding" under the CBA. Id. A court may not enforce a challenged JAC award unless it first finds that the dispute at issue is substantively arbitrable, i.e. the kind of dispute the parties agreed to submit to a JAC. see Id.; see also AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986).

3

In addition, the court must find that the JAC's members were properly selected under the procedures called for by the CBA. See Merryman Excavation, Inc. v. Int'l Union of Operating Eng'rs, Local 150, 639 F.3d 286, 291 (7th Cir. 2011). If these requirements are met, the JAC is authorized to resolve questions of procedural arbitrability, such as whether the grievance was properly filed, and the merits of the dispute. Id. at 291. Its resolution of such issues is entitled to great deference. Id.

The parties to an arbitration agreement may agree that the arbitrator can decide the issue of substantive arbitrability but must do so "clearly and unmistakabl[y]." See AT&T Techs., 475 U.S. at 649. In the present case, the Companies objected to arbitration and, therefore, did not clearly and unmistakably authorize the JAC to rule on the issue of substantive arbitrability. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 946 (1995). When defendants in an arbitration proceeding repeatedly object to the arbitrator resolving a dispute, they make it clear that they are unwilling to be bound by the arbitrator's decision. Id. Thus, I commence the analysis by asking whether the Companies agreed to have the JAC resolve the dispute at issue. The JAC found that they did, but I decide the question of substantive arbitrability de novo. See Stevens Const. Corp. v. Chicago Regional Council of Carpenters, 464 F.3d 682, 687 (7th Cir. 2006).

Under the single employer doctrine, two nominally separate companies can be treated as a single entity if they are sufficiently integrated with one another. See Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Serv. of Mobile, Inc., 380 U.S. 255, 256 (1965). If two companies have single employer status, then they are liable for one another's financial obligations to employees under a CBA. NLRB v. International Measurement and Control Co., Inc., 978 F.2d 334, 340 (7th Cir.1992); see also Lihli

Fashions Corp., Inc. v. N.L.R.B., 80 F.3d 743, 747 (2nd Cir. 1996). In other words, a promise to employees by one is treated as a promise by both. Applying this doctrine to the present case, I conclude that, although the Lippert Group and DeanAlan did not sign the CBA, they are bound by the arbitration agreement contained in the CBA if they and Lippert Tile, which did sign the CBA, constitute a "single employer."

To determine whether two companies constitute a single employer, I ask whether they have the type of arm's length relationship that ordinarily exists between unintegrated entities, Lihli Fashions, 80 F.3d at 747 (2d Cir. 1996), and I consider four factors: (1) common ownership, (2) centralized control over labor relations, (3) common management, and (4) interrelation of operations. Radio & Television Broadcast Technicians, 380 U.S. at 256. Based on these factors, I conclude that Lippert Tile, The Lippert Group and DeanAlan should be treated as a single employer. First, the Companies share common ownership. Les and Jeff Lippert each hold a 50% share in Lippert Tile and The Lippert Group. Second, the Companies' labor relations are centrally controlled. Such control can be demonstrated by showing that the individual in charge of labor relations of the signatory to the CBA made the decision that the second firm would be non-union. UA Local 343 of the United Assoc. of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the U.S. & Canada, AFL-CIO v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1995). Here, the owners of Lippert Tile acknowledge that they created DeanAlan solely to employ non-union workers and compete for non-union jobs.

Finally, the management and the day-to-day operations of the Companies are integrated. The Companies are co-located and coordinate most of their activities. Lippert Tile and DeanAlan both contract with The Lippert Group for administrative services and

support staff, and the Companies jointly decide which company will bid on each new project. Lippert Tile and DeanAlan share five salesmen/estimators who represent both companies at the weekly meeting to discuss new projects. Thus, for all practical purposes, the Companies function as a single entity. The fact that they have nominally different managers and reimburse one another for services is not enough to overcome this evidence of integration. Therefore, the Companies constitute a single employer, and each is bound by Lippert Tile's promise to arbitrate grievances covered by the CBA.

I note that in determining that the Companies are a single employer and therefore bound by Lippert Tile's promise to arbitrate, I am not deciding whether DeanAlan's employees are members of the bargaining unit represented by the Union. Remember, the question presently before me is substantive arbitrability, i.e. whether the Companies agreed to arbitrate. Because I am reviewing the decision of an arbitrator, the present case differs from cases in which courts decided whether companies were a single employer for the purpose of determining whether a group of employees was covered by a CBA. See, e.g., South Prairie Const. Co. v. Local No. 627, Int'l Union of Operating Eng'rs, AFL-CIO, 425 U.S. 800, 805 (1976); Lihli Fashions, 80 F.3d at 747; Nor-Cal Plumbing, Inc., 48 F.3d at 1470; Stardyne, Inc. v. N.L.R.B., 41 F.3d 141, 144–45 (3d Cir. 1994).

Continuing with the substantive arbitrability issue, I turn to whether the dispute that the JAC resolved is the type of dispute the parties agreed to arbitrate. The CBA calls for arbitration of disputes which arise "in connection with [the CBA]." Here, the dispute is whether the CBA covered DeanAlan's employees, clearly a question arising in connection with the CBA. Thus, the dispute is one that the JAC was authorized to resolve. See AT&T Techs., 475 U.S. at 650 (stating that an "order to arbitrate a grievance should not be

6

denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute.").

This is so even though the JAC made a bargaining unit determination that the National Labor Relations Board ("NLRB") would ordinarily need to make in the first instance. See South Prairie Const., 425 U.S. at 805–06 (noting that "the selection of an appropriate bargaining unit lies largely within the discretion of the [NLRB]"). The fact that a dispute raises a representational issue within the NLRB's primary jurisdiction does not prevent a JAC from resolving the issue. See Carey v. Westinghouse Elec. Corp., 375 U.S. 261, 268 (1964). As long as the NLRB has not made a ruling contrary to the JAC's decision as to the scope of the bargaining unit, the award can be upheld. See Id. at 272.

Next, I ask whether the JAC was properly composed and note that a JAC is a committee of arbitrators whose members are not neutral. Merryman Excavation, 639 F.3d at 292. Fairness is guaranteed instead by the balance between employer and union representatives on the committee. Id. In the present case, the JAC consisted of three employer representatives and three union representatives as called for by the CBA. Nevertheless, the Companies contend that the employer representatives could not serve on the JAC because they were not selected by Lippert Tile or the MTCA, and that Leckwee could not serve on the JAC because he is the Union member who filed the original grievance. However, the CBA does not require that the employer representatives be selected by the employer involved in the dispute, and there is no evidence that the employer representatives were biased against the Companies. Thus, the employer representatives were qualified to serve on the JAC. Leckwee was also qualified to serve on the JAC as the Companies point to no provision in the CBA that disqualified him. As

7

stated, JAC members are not supposed to be neutral, and the JAC was balanced as required by the CBA.

The remaining issues raised by the Companies relate to procedural arbitrability and the merits of the dispute. The procedural issues are whether the Union improperly filed the grievance by failing to send a copy to the MTCA and whether it waited too long to file the grievance after learning about Lippert Tile's double-breasting. The merits issues are whether DeanAlan's employees were covered by the CBA and whether such employees should receive back pay. As noted above, a JAC is authorized to resolve both issues of procedural arbitrability and the merits of the dispute, and its resolution of such issues is entitled to great deference. The record provides no basis for overturning the JAC's resolution of these issues.

For the foregoing reasons, I will affirm the decision of the JAC. I will, however, deny the Union's request for attorney's fees. A defendant may be entitled to attorney's fees where a challenge to an arbitration award is frivolous, Dries & Krump Mfg. Co. v. Int'l Assoc. of Machinists & Aerospace Workers, District No. 8, 802 F.2d 247, 254–55 (7th Cir. 1986), but the Companies' challenge in the present case was not frivolous.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's amended motion to enforce the arbitration award or in the alternative for summary judgment [DOCKET #23] is **GRANTED**, and plaintiffs' motion to vacate the award [DOCKET #39] is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's first motion to enforce the arbitration award [DOCKET #16] is **DENIED AS MOOT**.

8

Dated at Milwaukee, Wisconsin, this 20th day of June, 2012.

                                              <u>s/ Lynn Adelman</u>
                                              LYNN ADELMAN
                                              District Judge